# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JUDITH THOMAS | * | |
| | * | |
| v. | * | Case No. ELH-10-CV-3441 |
| | * | |
| SMITH, DEAN & ASSOCIATES, INC. | * | |
| | * | |
| and | * | |
| | * | |
| SIGNATURE MANAGEMENT SOLUTIONS, LLC | * | |
| | * | |

******

## REPORT AND RECOMMENDATION

The above-referenced case was referred to the undersigned for review of Plaintiff's Motion for Default Judgment (Paper No. 27) and Amended Motion for Default Judgment (Paper No. 32), and to make recommendations concerning damages, pursuant to 28 U.S.C. § 301 and Local Rule 301.6. (Paper No. 28). For the reasons discussed herein, I respectfully recommend that Plaintiff's motion (Paper No. 32) be GRANTED and that damages be awarded as set forth herein.

## I. BACKGROUND

Plaintiff Judith Thomas ("Plaintiff" or "Ms. Thomas") filed a Complaint in this court on December 7, 2010 alleging that defendants Smith, Dean & Associates, Inc. ("Smith, Dean") and Signature Management Solutions, LLC ("Signature") violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* and the Maryland Consumer Debt Collection Act ("MCDCA"), Md. Code Ann., Comm. Law § 14-201 *et seq.* (Compl., Paper No. 1). Specifically, Plaintiff alleges that a default judgment was entered against her in Maryland state court arising out of her failure to repay a high interest rate payday loan. (Id. ¶ 34, 35).

Defendant Smith, Dean acquired the rights to collect on that default judgment. (*Id.* ¶ 36). On or about September 22, 2010, an employee of Smith, Dean called Plaintiff on her work phone and failed to identify himself as a debt collector. (*Id.* ¶ 37, 38). Instead, the Smith, Dean employee represented that he was with the courts and that Plaintiff would be jailed unless she paid her debt. (*Id.* ¶¶ 38, 39). According to Plaintiff, Smith, Dean told Plaintiff that in order to get out of jail she would have to pay the debt and have someone pay a bond on her behalf. (*Id.* ¶ 40). Finally, Plaintiff alleges that Smith, Dean employees also called and left messages for Plaintiff's boss and for her friend/personal reference, conveying the same misrepresentations regarding the possibility that Plaintiff would be jailed if she did not satisfy her debt. (*Id.* ¶¶ 37, 41, 42). Smith, Dean's collection efforts lasted "a couple of days." (*Id.* ¶ 37).

After failing to collect the debt from Plaintiff, Smith, Dean apparently sold the rights to collect on the default judgment to Defendant Signature. (Id. ¶ 51). On or about October 1, 2010, (less than two weeks after the initial telephone contact from Smith, Dean), an employee of Signature called Plaintiff and identified herself as a locator working for a process server who was in possession of legal papers. (*Id.,* ¶ 54). The employee told Plaintiff that Signature wanted to give Plaintiff one last chance to call and work out the debt before the papers were served. (*Id.,* ¶ 55). Plaintiff further alleges that Signature was not licensed as a collection agency in Maryland, and as a result Signature was barred from filing a lawsuit against Plaintiff in the Maryland courts. (*Id.*, ¶¶ 65-67).

Plaintiff filed an Amended Complaint against Smith, Dean and Signature on January 13, 2011. Smith, Dean was served with the Summons and Amended Complaint on February 24, 2011 (Paper No. 17), and Signature was served with the Summons and Amended Complaint on February 28, 2011. (Paper No. 21). After both defendants failed to file an Answer or otherwise

defend, Plaintiff filed a Motion for Entry of Default (Paper No. 25) on May 4, 2011, which the clerk granted on May 9, 2011. Plaintiff thereafter filed a Motion for Default Judgment (Paper No. 27) on May 12, 2011. On June 1, 2011, Judge Hollander referred Plaintiff's motion to the undersigned for review and recommendations. On June 7, the undersigned issued an order denying the request for a jury trial on damages and requesting a memorandum detailing the damages claimed. In response, on June 24, Plaintiff filed a Motion for Default Judgment as to Damages. On June 27, the undersigned issued a second letter order requesting an affidavit and supporting documentation for any claim for attorney's fees and costs. Plaintiff filed an Amended Motion for Default Judgment (Paper No. 32), containing that information, on July 5, 2011.

## II. STANDARD FOR ENTRY OF DEFAULT JUDGMENT

In reviewing Plaintiff's Motion for Entry of a Default Judgment, the court accepts as true the well-pleaded factual allegations in the complaint as to liability. Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780-81 (4th Cir. 2001). It, however, remains for the court to determine whether these unchallenged factual allegations constitute a legitimate cause of action. Id.; see also 10A Wright, Miller & Kane, Federal Practice and Procedure § 2688 (3d ed. Supp. 2010) ("[L]iability is not deemed established simply because of the default . . . and the court, in its discretion, may require some proof of the facts that must be established in order to determine liability.").

If the court determines that liability is established, the court must then determine the appropriate amount of damages. Ryan, 253 F.3d at 780-81. The court does not accept factual allegations regarding damages as true, but rather must make an independent determination regarding such allegations. See, e.g., Credit Lyonnais Secs. (USA), Inc. v. Alcantara, 183 F.3d 151, 154 (2d Cir. 1999). In so doing, the court may conduct an evidentiary hearing. Fed. R. Civ.

P. 55(b)(2). The court can also make a determination of damages without a hearing so long as there is an adequate evidentiary basis in the record for an award. See, e.g., Adkins v. Teseo, 180 F.Supp.2d 15, 17 (D.D.C. 2001) (court need not make determination of damages following entry of default through hearing, but rather may rely on detailed affidavits or documentary evidence to determine the appropriate sum).

In sum, (1) the court must determine whether the unchallenged facts in Plaintiff's Complaint constitute a legitimate cause of action, and, if they do, (2) the court must make an independent determination regarding the appropriate amount of damages.

## II.    DISCUSSION

### a.  Smith, Dean's Liability under the FDCPA

Plaintiff asserts that Smith, Dean violated the FDCPA in two ways. First, assuming the truth of Plaintiff's allegations, Smith, Dean represented to Plaintiff that the Smith, Dean employee was "with the courts" and that Plaintiff was subject to arrest and jailing for failure to pay her debt. (Amd. Compl. ¶ 39). 15 U.S.C. § 1692e forbids the use of "any false, deceptive, or misleading representation or means" in debt collection, and provides a non-exhaustive list of conduct that violates the FDCPA. For example, § 1692e(5) provides that a "threat to take any action that cannot legally be taken or that is not intended to be taken" falls within the definition of a "false, deceptive, or misleading representation." The FDCPA also prohibits "[t]he representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person . . . unless such action is lawful and the debt collector or creditor intends to take such action." 15 U.S.C. § 1692e(4). Because Smith, Dean was not in fact "with the courts," it had no authority to arrest or jail Plaintiff, and there was no basis for Plaintiff's

arrest or imprisonment. As a result, Smith, Dean's representations to the contrary violated the FDCPA.

Second, Plaintiff alleges that Smith, Dean violated the FDCPA by calling her boss and her friend regarding the debt she owed after Smith, Dean had already located and spoken with Plaintiff about the debt. Under the FDCPA, specifically § 1692c(b), "a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector." Again assuming the veracity of Plaintiff's allegations, Smith, Dean violated this provision because it communicated with unauthorized persons about the debt owed by Plaintiff.

### b. Damages against Smith, Dean

The FDCPA provides for statutory damages in an amount up to $1000.00 for each lawsuit, 15 U.S.C. § 1692k(a)(2)(A), in addition to any actual damages. See Wright v. Finance Serv. of Norwalk, Inc., 22 F.3d 647, 651 (6th Cir. 1994) ("Congress intended to limit 'other damages' to $1,000 per proceeding, not to $1,000 per violation."). In determining the amount of statutory damages to be awarded in a particular case, a court shall consider, among other factors, "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional." 15 U.S.C. § 1692k(b)(1). Other courts have noted that "the maximum statutory damage award is only assessed in cases where there [have] been repetitive, egregious FDCPA violations and even in such cases, the statutory awards are often less than $1000." Ford v. Consigned Debts & Collections, Inc., 2010 WL 5392643 at *5 (D.N.J. Dec. 21, 2010). In this case, Smith, Dean is alleged to have made several phone calls to Plaintiff, over a couple of days, and to have left two

5

messages for Plaintiff's associates. However, Smith, Dean's first telephone call was on September 21, 2010, and by October 1, 2010, Smith, Dean had transferred the collection efforts to Signature. Smith, Dean's efforts were therefore neither frequent nor persistent. Because of the threat of imprisonment and the unlawful contact with Plaintiff's employer, however, I recommend an award of statutory damages in the amount of $500.00.

"Actual damages" under the FDCPA include damages for embarrassment and emotional distress. See e.g., Chiverton v. Fed. Fin. Group, Inc., 399 F.Supp.2d 96 (D. Conn. 2005); Smith v. Law Offices of Mitchell N. Kay, 124 B.R. 182, 185 (D.Del. 1991) (noting that actual damages under the FDCPA include those for humiliation, embarrassment, mental anguish and emotional distress); see also *Statements of General Policy or Interpretation Staff Commentary On the Fair Debt Collection Practices Act*, 53 Fed.Reg. 50,097, 50,109 (Dec. 13, 1988) (reflecting that Congress intended "actual damages" under the FDCPA to include "not just out-of-pocket expenses, but [also] damages for personal humiliation, embarrassment, mental anguish, or emotional distress."). Plaintiff alleges that between September 21, 2010 and September 24, 2010 (when she was first able to consult with her attorney), she suffered emotional distress because she was concerned that she could be jailed for failure to pay her judgment. She further alleges that she was embarrassed and humiliated by Defendant Smith, Dean's telephone calls to her boss and her friend. Mot. at 8. Although Plaintiff represents that "similar actual damages evidence" has resulted in large actual damages awards, the cases Plaintiff cites are in fact far more egregious than the instant case. See, e.g., Myers v. LHR, Inc., 543 F. Supp. 2d 1215 (S.D. Cal. 2008) (awarding $90,000 in actual damages where the plaintiff did not actually owe the debt in

question, suffered significant actual medical expenses from the stress, and the erroneous debt was reported on plaintiff's credit report and affected her ability to purchase a home).[1]

Although there are few cases similar to Plaintiff's in the Fourth Circuit, a survey of recent default judgment opinions in FDCPA cases nationwide demonstrates that the two cases cited by Plaintiff are clearly outliers, involving serious consequences suffered by plaintiffs who did not actually owe the debts in question. In describing its own survey of actual damages awarded in FDCPA cases, the Court in Ford v. Consigned Debts & Collections, Inc., 2010 WL 5392643 at *5 (D.N.J. Dec. 21, 2010), stated:

> Those cases also show that awards for actual damages are minimal for emotional distress absent any indication that mental health treatment has been obtained or that the emotional distress has concretely affected a plaintiff's personal or professional life. Moreover, even in cases where a plaintiff has suffered permanent personal and professional damages, the damages awards are relatively small, particularly in comparison to plaintiff's $50,000 request.

Like the Ford case, Plaintiff's case is much closer to the heartland of FDCPA cases involving allegations of emotional distress with no mental health treatment, which result in significantly lower, if any, awards for actual damages. See, e.g., Marchman v. Credit Solutions Corp., 2011 WL 1560647 (M.D. Fla. April 5, 2011) (recommending an award of $100.00 in statutory damages and no actual damages where plaintiff received two telephone calls including a threat to contact Plaintiff's employer, and claimed loss of sleep, worry, withdrawal, and depression);

---

[1] Plaintiff also cites one other allegedly "similar" case, Bennett v. Bay ARTea Recovery Services, 2007 U.S. App. LEXIS 7481 (9th Cir. 2007), in support of an extremely high award of actual damages. That opinion, which is actually entitled Bennett v. American Medical Response, Inc., provides no facts by which one could determine whether or not it is factually similar to Plaintiff's case. A review of the underlying district court opinion, Bennett v. Bay Area Credit Service, Inc., 2005 WL 5681083 (D. Mont. 2005), demonstrates that in that case the plaintiff did not actually owe the debt in question, the plaintiff suffered hair loss as a result of the stress, the defendant continued its collection efforts even after receiving correspondence from the plaintiff's attorney contesting the debt and continued collection efforts even more than a year after the Court entered Default Judgment for the FDCPA violations. Those facts are significantly more egregious than the facts in the instant case.

Williams v. Delanor, Kemper & Assoc., LLC, 2011 WL 1304896 (E.D. Mo. April 1, 2011) (awarding $2500.00 in actual damages and $1000.00 in statutory damages there plaintiff received a phone call threatening legal action and prosecution and a letter threatening legal action, plus seven additional voice mail messages after informing defendant of representation by counsel, and suffered personal humiliation, embarrassment, mental anguish, and concern about lawsuit or criminal action); Hett v. Bryant Lafayette and Assoc. LLC, 2011 WL 740460 (E.D. Mich. Feb. 24, 2011) (awarding $2000.00 in actual damages and $1000.00 in statutory damages where repeated calls for a debt owed by Plaintiff's sister-in-law caused emotional distress to Plaintiff's wife recovering from major surgery); Ford, 2010 WL 5392643 (D.N.J. Dec. 21, 2010) (awarding $350.00 in statutory damages and $200.00 in actual damages where plaintiff received one message that failed to identify the caller and one call threatening to sue the plaintiff, inform the plaintiff's parole officer, and have plaintiff thrown back in jail, causing anxiety and exasperation for a few weeks, lack of sleep, and depression); Pearce v. Ethical Asset Management, 2010 WL 932597 (W.D.N.Y. March 11, 2010) (awarding actual damages of $750.00 to daughter and $1079.00 to mother, plus $250.00 in statutory damages to each, where defendant left multiple messages on answering machine threatening to take daughter/debtor to court, engaged in two phone calls with mother who authorized some payments to protect daughter from taking to court, screamed and used profanity at mother when she revoked authority for the payments, and continued taking payments from the mother's account despite revocation, where both mother and daughter claimed anxiety and emotional distress); Mostiller v. Chase Asset Recovery Corp., 2010 WL 335023 (W.D.N.Y. Jan. 22, 2010) (awarding actual damages of $250.00 and statutory damages of $150.00 where defendant left one voice message saying it was "gonna take action against" Plaintiff which was overheard by fiancé who was not

aware of debt, causing stress and emotional distress); Jenkins v. Eastern Asset Mgmt, LLC, (E. D. Mo. Aug. 12, 2009) (awarding $2000.00 in actual damages and $1000.00 in statutory damages where defendant made five telephone calls to plaintiff at work over a one-week period threatening to sue, causing emotional and mental anguish, anxiety, stress, and concern about job); Basinger-Lopez v. Tracy Paul & Assoc., 2009 WL 1948832 (N.D. Cal. July 6, 2009) (awarding $1000.00 in statutory damages and finding that "plaintiff has not made a sufficient showing to warrant an award of actual damages" where defendant made a phone call threatening to sue and to contact relatives, neighbors and employers, then made more threatening phone calls and a letter threatening legal action over approximately three-week period, causing emotional distress, embarrassment, sleeplessness, and invasion of privacy); Annis v. Eastern Asset Mgmt., LLC, 2010 WL 1035273 (W.D.N.Y. Mar. 18, 2010) (awarding statutory damages of $1000.00 (due to the frequent and persistent calls) and actual damages of $3500.00 to daughter and $500.00 to each parent where defendant made telephone calls to daughter and parents almost every day for four months, engaged in a phone call with father discussing the daughter's debt without authority to do so and referred to a judgment that would be filed against daughter for missing court dates, causing distress, humiliation and strain on relationships). In Plaintiff's case, in contrast to many of the cases described above, the conduct in question and the physical and emotional effects to Plaintiff lasted only three days. Pl. Aff. ¶ 22-29. Nearly a year later, Plaintiff remains employed with no concrete effect on her professional life. I therefore recommend an award of $1500.00 in actual damages to compensate Plaintiff for the stress and humiliation she suffered as a result of Smith, Dean's conduct.

### c. Defendant Signature's liability under FDCPA

Debt collection efforts violate the FDCPA, 15 U.S.C. § 1692e(5), where (1) a debtor would reasonably believe that the collector was threatening legal action; and (2) the debt collector does not intend to or cannot take legal action against the debtor. See e.g., United States v. Nat'l Fin. Services, Inc., 98 F.3d 131, 135-36 (4th Cir. 1996) (attorney's letters to debtors threatening to take legal action violated § 1692e(5) when attorney knew that filing suits was impracticable and creditor had no intention of suing thousands of debtors who received letters); Withers v. H.R. Eveland, 988 F. Supp. 942, 946 (E.D. Va. 1997) (non-attorney debt collector violated FDCPA by threatening legal action when, as non-attorney, it could not represent another before tribunal). To determine what a debtor would reasonably believe about a communication, the Court is to analyze the communication from the perspective of the "least sophisticated debtor." United States v. National Financial Services, Inc., 98 F.3d 131, 135-36 (4th Cir. 1996).

Assuming the truth of Plaintiff's allegations, Signature represented to Plaintiff that a process server had legal papers ready to serve on Plaintiff, but that Signature was willing to entertain one more phone call to try to work out the debt. The least sophisticated debtor, and frankly even a more sophisticated debtor, would reasonably understand that communication to mean that Signature had prepared and filed a civil lawsuit against Plaintiff.

Maryland law, specifically the Maryland Collection Agency Licensing Act ("MCALA"), requires that "a person must have a license whenever the person does business as a collection agency in the State." Md. Code Ann., Bus. Reg., 7-301(a). "Collection agency" is defined in relevant part as "a person who engages directly or indirectly in the business of . . . (ii) collecting a consumer claim the person owns, if the claim was in default when the person acquired it." 7-101(c). Plaintiff alleges that Signature was not licensed to engage in collection activities in

Maryland. (Amd. Compl. ¶ 67). As a result, Signature could not take legal action against Plaintiff, and its telephone call to Plaintiff violated the FDCPA, specifically § 1692e(5), by threatening legal action it could not take. Moreover, because the Signature employee was not in fact a process server prepared to serve Plaintiff, Signature's telephone call also used "any false, deceptive or misleading representation or means in connection with the collection of any debt," in violation of the FDCPA, § 1692e.

Plaintiff does not claim any actual damages proximately caused by Signature's conduct. Using the standards described above to consider the appropriate award of statutory damages, the allegations in the complaint establish that Signature made one telephone call to Plaintiff and that Plaintiff called an employee of Signature back to discuss her debt. Signature's conduct was neither frequent nor persistent, and did not involve any telephone calls to other parties. As a result, I recommend that the judgment against Signature be limited to a $150.00 award of statutory damages, plus attorney's fees and costs.

### d. The MCDCA

The MCDCA's prohibitions are generally parallel to the prohibitions of the FDCPA, and the actions of both Smith, Dean and Signature therefore violated the Maryland statute as well. However, as described above, Plaintiff does not allege any actual damages resulting from Signature's conduct, and recovery for the actual damages caused by Smith, Dean's conduct has already been awarded under the FDCPA. Allowing recovery under the MCDCA would constitute double recovery for the same harm, and Plaintiff concedes that recovery under only one statute is appropriate. Pl. Memo. In Support of Default Damages, p. 2 n.1. For those reasons, I recommend that no additional damages be awarded under the MCDCA.

### e. Attorney's Fees and Costs

A prevailing plaintiff is entitled to a mandatory award of reasonable attorney's fees under the FDCPA, but the amount of the award is left to the district court's discretion. Carroll v. Wolpoff & Abramson, 53 F.3d 626, 628 (4th Cir. 1995) (upholding a fee award of only $500.00 in fees where claimed lodestar amount was almost $10,000.00). In calculating the appropriate award of attorney's fees, the Court must first determine the lodestar amount, defined as a "reasonable hourly rate multiplied by hours reasonably expended." Grissom v. The Mills Corp., 549 F.3d 313, 320-21 (4th Cir. 2008); see Plyler v. Evatt, 902 F.2d 273, 277 (4th Cir. 1990) (stating that "[i]n addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award") (internal citations omitted). A trial court may exercise its discretion in determining the lodestar amount because it possesses "'superior understanding of the litigation,'" and the matter is "'essentially'" factual. Thompson v. HUD, No. MJG-95-309, 2002 WL 31777631, at *6 n.18 (D. Md. Nov. 21, 2002) (quoting Daly v. Hill, 790 F.2d 1071, 1078-79 (4th Cir. 1986)). Once the lodestar amount has been determined, the Court determines whether or not it constitutes a reasonable fee, and makes any necessary adjustments. See Carroll, 53 F.3d at 629. In evaluating both the lodestar calculations and the overall reasonable fee, this Court uses "the twelve well-known factors articulated in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974) and adopted by the Fourth Circuit in Barber v. Kimbrell's, Inc., 577 F.2d 216, 226 (4th Cir. 1978)." Thompson, 2002 WL 31777631, at *6 (footnotes omitted). Those factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to properly perform the legal service; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the

client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at *6 n.19 (citing Johnson, 488 F.2d at 717-19). What is reasonable depends on the facts and circumstances of the case and "§ 1692k does not mandate a fee award in the lodestar amount." Carroll, 53 F.3d at 629.

In this case, Plaintiff's counsel, Cory Zajdel, Esq., asserts that the appropriate lodestar calculation in this case is 48.9 hours at a rate of $350.00 per hour, for a total of $17,115.00. To put this request in context, it is useful to look first at the last Johnson factor, "awards in similar cases." Mr. Zajdel's request far exceeds fee requests and awards in the vast majority of FDCPA default judgment cases, both in terms of the number of hours worked and the total fee claimed. See, e.g., Williams v. Delanor, Kemper & Assoc. LLC, 2011 WL 1304896 (E.D. Mo. April 1, 2011) (awarding fees and costs of $2607.50 for default judgment on FDCPA claim); Hett v. Bryant Lafayette and Assoc. LLC, 2011 WL 740460 (E.D. Mich. Feb. 24, 2011) (noting an attorney fee request of $2385.00, plus costs of $370.00); Coles v. Land's Towing and Recovery, Inc., 2010 WL 5300892 (E.D. Va. Dec. 22, 2010) (awarding $3000.00 in attorney's fees for 9.3 attorney hours and 1.7 paralegal hours, plus $462.50 in costs); Nicholes v. Advanced Credit Mgmt., Inc., 2010 WL 2998625 (D. Md. July 27, 2010) (recommending an award of $3150.00 in attorney's fees and $442.00 in costs); Annis v. Eastern Asset Mgmt., LLC, 2010 WL 1035273 (W.D.N.Y. Mar. 18, 2010) (awarding $4240.50 in fees for 20.3 hours worked and $410.00 in costs); Mostiller v. Chase Asset Recovery Corp., 2010 WL 335023 (W.D.N.Y. Jan. 22, 2010) (awarding fees and costs of $4152.50 for 19.1 hours worked, including $410.00 in costs); Jenkins v. Eastern Asset Mgmt, LLC, 2009 WL 2488029 (E. D. Mo. Aug. 12, 2009) (awarding fees of $3125.00 plus costs of $395.00); Basinger-Lopez v. Tracy Paul & Assoc., 2009 WL 1948832

(N.D. Cal. July 6, 2009) (awarding attorney's fees of $4002.00 for 15.3 attorney hours and 1.3 paralegal hours worked, plus costs of $530.52); Molinar v. Coleman, 2009 WL 435274 (N.D. Tex. Feb. 20, 2009) (awarding fees of $2300.00 for 13 hours worked, plus $500.00 in costs); Bennett v. Bay Area Credit Service, Inc., 2005 WL 5681083 (D. Mont. March 11, 2005) (awarding $2139.30 in fees). While there have been similar or higher fee awards in some outlier cases, those cases involve hearings, additional work, or significantly higher damage awards than Plaintiff's case, which is much closer to the heartland of FDCPA cases. See, e.g., In re Baie, 2011 WL 1257148 (Bkrtcy. E.D.N.C. Mar 30, 2011) (awarding $10,040.00 in fees where attorney had engaged in communications with defendant and made a written demand for authentication of debt, and where plaintiff received $10,000.00 in actual damages under the FDCPA, plus an additional $10,000.00 in statutory damages under the relevant state statute, because plaintiff did not owe the debt in question, suffered months of stress from defendant's continued conduct, and missed three days of work); Myers v. LHR, Inc., 543 F.Supp.2d 1215, (S.D. Cal. 2008) (awarding $24,934.50 in fees in multi-defendant case where actual damage award was $90,000.00 "in light of the complexity of the legal and factual issues and procedural posture of the case"). For "heartland" cases like Plaintiff's, courts have approved reasonable attorney's fee awards in the general range of $2100.00 - $4300.00 to compensate for total attorney hours ranging from 13-21 hours worked.

In that context, this Court considers Mr. Zajdel's proposed lodestar calculation of 48.9 hours at a rate of $350.00 per hour. First, Appendix B to this Court's Local Rules, Rules and Guidelines for Determining Attorneys' Fees in Certain Cases, provides a guideline that a reasonable hourly rate for lawyers admitted to the bar for five (5) to eight (8) years is $165.00 - 250.00. Loc. R. App'x B, at 3 (footnote omitted). However, these Guidelines are not definitive;

they are "solely to provide practical guidance to lawyers and judges when requesting, challenging and awarding fees." Loc. R. App'x B n.6. The Court may also consider "affidavits of lawyers in the [relevant] legal community attesting to the customary rates charged for [similar matters]." Poole ex rel. Elliott v. Textron, Inc., 192 F.R.D. 494, 509-10 (D. Md. 2000). No such affidavits have been submitted in this case.

Mr. Zajdel became a member of the Maryland state bar in December of 2004, which means that he has approximately 6.5 years of experience. None of the relevant Johnson factors support increasing the reasonable fee outside of the guidelines in this matter. The questions presented in Plaintiff's routine FDCPA case were neither novel nor difficult, and required no special skill to litigate. The case was not "undesirable." Although Mr. Zajdel accepted the case on a contingent basis, because the case was resolved by default, it was neither time-consuming nor delayed over a period of years. The demands of the case did not preclude Mr. Zajdel from accepting other employment. The "nature and length of the relationship with the client" also does not support an increase in the hourly rate. Mr. Zajdel clearly has a good working relationship with his client, as he has six other cases currently or formerly pending in this Court with Ms. Thomas named as the lead plaintiff or sole plaintiff. See Thomas v. Mann Bracken, LLP, 09-3440-ELH, (FDCPA and MCDCA ); Thomas v. Citifinancial Auto Credit, Inc., Civil No. 10-0528-JKB (class action involving the Maryland Credit Grantor Closed End Credit Provisions, the Maryland Consumer Protection Act, and other state law claims); Thomas v. DCFS USA, LLC, 10-2290-JFM (class action involving Maryland's interest and usury law, the Maryland Consumer Protection Act, and other state law claims); Thomas v. AFWI, Inc., 11-1202-JKB (FDCPA and MCDCA); Thomas v. Front Range Opportunities LLC, 11-1211-ELH (FDCPA and MCDCA); and Thomas v. Sunshine Financial Group LLC, 11-1367-BEL (class

action involving FDCPA and MCDCA). Because none of the Johnson factors support a deviation from the presumptively reasonable guidelines, I recommend that the appropriate hourly rate in the lodestar calculation be reduced to an amount slightly above the midpoint of the reasonable range, or $210.00/hour.

Even with that reduction, however, the court has to address the reasonableness of the hours claimed in determining whether the lodestar calculation results in a reasonable fee. In Thompson, 2002 WL 31777631, this court described the burden that a party bears in establishing its fees:

> The prevailing party bears the burden of providing this Court with sufficiently detailed time sheets to justify the hours for which an award is sought. This generally consists of an itemized listing of hours and expenses and a short description for each entry explaining how the time was spent. See, e.g., Fair Housing Council of Greater Washington v. Landow, 999 F.2d 92, 97-98 (4th Cir. 1993) (burden is on fee applicant to show which hours are recoverable); Costar Group, Inc. v. LoopNet, Inc., 106 F. Supp. 2d 780, 788 (D. Md. 2000) (Fee applicant has burden of proving hours by submitting contemporaneous time records that reveal all hours for which payment is sought and explaining how the hours were allocated to specific tasks. The court may reduce the number of hours awarded if documentation is vague or incomplete.); West Virginians for Life, Inc. v. Smith, 952 F. Supp. 342, 345 (S.D.W.Va. 1996) ("The fee applicant bears the burden of producing detailed time sheets sufficient to justify the amount of hours he claims to have expended."); Stacy v. Stroud, 845 F. Supp. 1135, 1143 (S.D. W. Va. 1993)] (time entries must be sufficient to document the hours worked and show that they are not excessive, redundant or otherwise unnecessary). It is not required, however, that the applicant submit minutely detailed records in support of a fee request; rather, the emphasis is on whether there is sufficient detail. Daly v. Hill, 790 F.2d 1071, 1080 (4th Cir. 1986).

*Thompson*, 2002 WL 31777631, at *9-10 (emphasis added). In this case, Mr. Zajdel has submitted an affidavit containing a spreadsheet of hours worked per task, totaling 48.9 hours. As described above, 48.9 hours for a FDCPA case resulting in a default judgment is more than twice the number of hours claimed in similar cases. Mr. Zajdel provides a great deal of information

regarding his experience and ability in support of his claimed hourly rate. However, it is fair to presume that an attorney with increased experience in a particular area should be able to perform the necessary tasks in fewer hours, not more hours, than attorneys with less experience.

In addition to the total hours claimed, several of the specific tasks in the attorney's fee spreadsheet appear to have taken excessive amounts of attorney time to complete. For example, Mr. Zajdel claims 2.5 hours to "investigate identity of debt collectors re: Smith, Dean & Associates, Inc. and Signature Management Solutions, LLC." Without further information, this appears to be the type of task that could have been delegated to a paralegal or administrative employee for much lower cost. Mr. Zajdel claims a total of 5.1 hours to draft the complaint. Entire sections of the twelve page complaint, including the introduction and all of Count Two, were cut and pasted from the complaint Mr. Zajdel filed in 2009 in <u>Thomas v. Mann Bracken, LLP</u>, Civil No. 09-3440-ELH, another FDCPA and MCDCA case involving the same attorney and same Plaintiff. More than 12 hours were spent on a memorandum itemizing default judgment damages. That nine page memorandum cites only five cases and the FDCPA, and reiterates a series of factual allegations contained in the complaint. In addition, there is a four page declaration from Plaintiff, Ms. Thomas, which again summarizes the factual allegations from the complaint. Given the relative brevity of the memorandum and the lack of legal research required to prepare it, in addition to the extensive experience counsel describes in consumer protection cases, these hours appear excessive. Finally, Mr. Zajdel cites an additional 9.4 hours spent preparing the amended motion for default judgment, the memorandum in support of attorney's fees and costs (6 pages), and the affidavit in support of that memorandum (9 pages). The memorandum contains a series of boilerplate recitations about the fee shifting provisions of the FDCPA and the general calculation of attorney fees. For an attorney who specializes in the

area of consumer protection statutes, most of which contain fee shifting provisions, none of this law is novel or difficult. The relatively brief memorandum, and the affidavit in support of the memorandum, primarily consist of extensive biographical information about Mr. Zajdel. Most of that information, including approximately 1.5 pages listing his published opinions, appears to have been cut and pasted directly from Mr. Zajdel's firm website, www.zlawmaryland.com. Approximately two pages of the affidavit consists of a spreadsheet of billing entries. As those entries were contemporaneously maintained by Mr. Zajdel over the course of the litigation, it should have been a matter of minutes, not hours, to prepare that portion of the affidavit. Given the nature of the information contained in the memorandum and affidavit, 9.4 hours seems unreasonable and excessive.

Finally, it is worth noting that Plaintiff originally sought a jury trial on damages. After this Court denied that request and instead asked for written support for claimed damages and attorney's fees, 22.3 hours of attorney time were expended in preparation of motions and supporting documents that seek $75,000.00 in actual damages and $17,115.00 in attorney's fees. Under the final Johnson factor, "the amounts involved and the results obtained," those hours should be reduced dramatically. Comparable cases simply do not support damages or fees in those inflated amounts, and the hours spent attempting to justify those exorbitant damage and fee claims cannot be deemed reasonable.

I recommend that the appropriate lodestar calculation, then, be 20 hours of time at $210.00 per hour, for a total fee of $4200.00, which is both reasonable and at the higher end of the range of the heartland of FDCPA default judgment cases. I further recommend that Plaintiff be awarded her full and reasonable costs (a filing fee and a service fee) in the amount of $450.00. FDCPA, § 1692k(a)(3).

**Conclusion**

For the reasons set forth above, I recommend that:

1. The Court GRANT Plaintiff's Motion for Default Judgment (Paper No. 27); and

2. The Court award plaintiff $500.00 in statutory damages and $1500.00 in actual damages for defendant Smith, Dean's violation of the FDCPA, for a total of $2000.00, and $150.00 in statutory damages for defendant Signature's violation of the FDCPA, in addition to $4200.00 in attorney's fees and $450.00 in costs.

I also direct the Clerk to mail a copy of this Report and Recommendation to defendants Smith, Dean and Signature at the addresses listed on Plaintiff's Amended Complaint (Paper No. 10).

Any objections to this Report and Recommendation must be served and filed within fourteen (14) days, pursuant to Fed. R. Civ. P. 72(b) and Local Rule 301.5.b.


Dated:  July 12, 2011                                     /s/
                                                   Stephanie A. Gallagher
                                                   United States Magistrate Judge